MOOREHEAD, Respondent, v. VAN DYKE, Appellant. (Supreme Court, Appellate Division, Second Department. July 24, 1906.) Action by Thomas A. Moorehead against Albert M. Van Dyke. From a judgment for plaintiff, defendant appeals. Affirmed. Argued before WOODWARD, JENKS, HOOKER, RICH, and GAYNOR, JJ. Francis S. McDivitt, for appellant. Henry Escher, Jr. (George F. Elliott, on the brief), for respondent.

PER CURIAM. Affirmed.

GAYNOR, J. (dissenting). There is no evidence that the minds of the purchaser and seller ever met on a price. The property was a farm consisting of upland and meadow land, between 28 and 29 acres of the former and 3 and 4 acres of the latter. The plaintiff says that he went to see the defendant and asked him if his property was for sale; that the defendant answered that he would sell it for $2,000 an acre but would like to get $2,200. The plaintiff then says he told him he would try to get a purchaser, and that the defendant responded that he would not do anything at that time, and also said "he would not do anything without consulting Mr. McDivitt, who was his attorney and had absolute charge of all his affairs."

The plaintiff then went to see Mr. McDivitt, but no price was mentioned for the land. The plaintiff asked him what his (the plaintiff's) commission would be if he made a sale, and he said 2½ per cent. Afterwards the plaintiff went again to see Mr. McDivitt, bringing with him Knowles, a proposed purchaser. The price was talked of, and McDivitt, gave them a slip of paper in which he set the upland down at $1,900 an acre and the meadow land at $300 an acre, and specified the amount to be paid in cash, and that the balance might remain on bond and mortgage at 5 per cent.

Afterward the plaintiff and Knowles called on the defendant and offered him $1,900 and then $1,950 an acre for the upland, which offers were refused. They say that the defendant said, "I told you my price was $2,000," and that thereupon Knowles said he would take it at $2,000 an acre. The defendant refused to sign a contract, and also refused to accept $300 tendered to him by Knowles, saying that he would not sign any papers except in the presence of his attorney. He then said that he would meet them at his attorney's office on the 2nd of May, it being then April 16th. On May 2nd they all met at the attorney's office and the defendant refused to make the contract.

It will be observed that there is no evidence that the defendant ever said that his attorney had authority to fix a price on the property. All he said was that he would not do anything without consulting his attorney, who had charge of his affairs. The prices put on the piece of paper by the attorney were therefore not binding. Nor were they deemed binding by the plaintiff and his purchaser, for in place of closing with the attorney they went to the defendant personally and offered him the $1,900, and then $1,950, and finally $2,000 an acre for the upland. They mentioned no price for the meadow land (lowland), so that it is plain that no price was ever arrived at as to that part of the farm at all events, and therefore for the farm, for it was for sale only as a whole; unless the $2,000 an acre was for the meadow land also, which the plaintiff says was not the case, but that it was to be taken at the price put on the paper by the attorney, viz., $300 an acre.

And if the defendant's attorney is to be deemed his agent with authority to sell, there is another conclusive reason why the plaintiff cannot recover. The plaintiff proved by Knowles that when he and Knowles saw the attorney, as stated above, they agreed with him that if

a sale was effected they would give half of the commission to the attorney, and this was never revealed, so far as appears, to the defendant. The agreement of Knowles and the plaintiff to give the attorney half of the commission was a corrupt agreement, necessarily intended in law to seduce him from his duty to the defendant, and no agreement which they made with him under such a condition would bind the defendant. The defendant had already told the plaintiff that his lowest price was $2,000, and yet he got the price of $1,900 from the attorney. Proof of such corrupt agreement was proof that the plaintiff was not acting in the interest of the defendant, but in that of the buyer.

The judgment should be reversed.

WOODWARD, J., concurs.